OPINION
Shannon Renee Davis is appealing from a decision of the probate court that her consent is not necessary for the adoption of her three children by the children's stepmother, Lea-Ann Kira Sherwood LaFave. In an adoption case, the decision by probate court that consent by a natural parent is not necessary for the adoption to occur is a final appealable order by itself, before the decision on the adoption is made. In Re: Adoption of Greer
(1994), 70 Ohio St.3d 293.
The sole assignment of error presented is the probate court's decision that the consent of the natural parent is not necessary for the adoption of the three children here. Separate adoption petitions were filed for each of the children, but the probate court considered them together, holding a hearing on all three at the same time, and the three cases are consolidated for purposes of this appeal.
The three children were born from the marriage of the appellant and Jeffrey LaFave. On the day of the hearing by the probate court, held January 27, 1999, Aaron Alexander was eleven years old, Emily Caitlin was nine years old, and Gabrielle Rene was age four. The marriage, which had begun in July, 1987, ended in a divorce decree in Michigan in March, 1995, but the parties had separated one year earlier. The appellant was awarded physical custody of the three children and the appellant and Mr. LaFave were granted "what Michigan calls joint legal custody of the children." Tr. 5. Jeffrey LaFave married the petitioner for adoption, Lea-Ann Kira Sherwood LaFave[1], in August, 1996, and a month later, Jeffrey successfully petitioned the court in Michigan to award him sole physical and sole legal custody of his children. The decree of the Circuit Judge states in relevant in part as follows:
 This matter having come before the Court on Plaintiff's Petition to Change Custody, September 23, 1996, being the day scheduled for trial in this matter, the Defendant having received adequate notice of said trial, having heard proofs on the record in open court, the Court having reviewed the report and recommendation of the Ingham County Friend of the Court investigator, having reviewed the report of Dr. Joshua Ehrlich, Defendant having failed to appear and/or defend the matter, the Court being concerned for the safety and well-being of the minor children and the potential for irreparable damage or harm that may occur should Defendant, SHANNON RENEE LAFAVE (NOW DAVIS), receive notice of this Order prior to this Order being executed, and the Court being otherwise fully advised in the premises; . . . IT IS FURTHER ORDERED AND ADJUDGED that this Order shall be entered with the appropriate law enforcement agency of the locale where the minor children may be located directing said law enforcement agency to immediately retrieve the minor children, and deliver them to Plaintiff and/or Plaintiff's agents without notice to Defendant, SHANNON RENEE LAFAVE (NOW DAVIS). Tr. 5, Plaintiff's Exhibit 1, emphasis in the original.
The extraordinary order of the court that the children be immediately taken into custody by the police in Pennsylvania, where Shannon had moved with the children, can only be explained by its stated concern for their safety and well-being. The Defendant's Exhibit A in this case is titled "Letter of Intent", and it is a letter dated March 16, 1994, in which Jeffrey states his intention to continue to provide full financial support for Shannon and the children, "without Shannon having to work". Jeffrey testified that: "this is a letter that I wrote shortly after Shannon called me and said she was going to kill herself and the children. It basically says at that point in time, prior to the Judgment of Divorce that I would provide for her and for the children and that type thing. . . . Subsequently, it was rescinded prior to the Judgment of Divorce." Tr. 30. Later in the hearing, Jeffrey was asked on cross-examination:
 Q. "Is it fair to say that you and Shannon, after divorce, had terrible problems?"
 A. "What Michigan calls the worst case they have ever seen."
Tr. 47.
In the same September 23, 1996, entry, partially quoted above, the Circuit Court rescinded its previous order that Jeffrey pay child support to Shannon and further ordered that Shannon "may enjoy only supervised visitation with the parties minor children . . . until such time as the court is provided with a complete psychological evaluation of [Shannon]." The court further ordered Shannon to pay child support to Jeffrey to be determined pursuant to the Michigan Child Support Guidelines by the "Ingham County Friend of the Court." Id. The support was later fixed at $4.33 per child per week. Tr. 9, Plaintiff's Exhibit #3. Finally, the order ended with the Court ordering Shannon to pay attorney fees to Jeffrey in the amount of six thousand ($6,000.00) dollars as a result of her "repeated failure to appear at any hearing in this matter and her failure to appear at trial." Plaintiff's Exhibit #1.
In a later order, dated August 18, 1997, the same Circuit Judge, after first noting that Shannon had failed to appear for a hearing set on Jeffrey's motion for child support and imputation of income, increased the child support Shannon was required to pay to $20.34 per week per child. It further ordered that the address of the plaintiff, Jeffrey, which was then in Michigan, "shall not be revealed to" Shannon "or any of her agents." Plaintiff's Exhibit #4. It further noted that Shannon's then address was in Pittsburgh, Pennsylvania, and that both parties should keep the Friend of the Court advised of any changes in residential addresses and of any changes in their place of employment and, again, ordering that Jeffrey's work address shall not be disclosed to Shannon. Id. Jeffrey and his new wife subsequently moved to Montgomery County, Ohio, for purposes of his employment, and the Circuit Court in Michigan entered an order releasing jurisdiction to the State of Ohio with regard to "any issues pertaining to the children", early in 1998. Tr. 44-45.
It is undenied that Shannon never sent any money, whatever, at any time for child support. She testified that she did not have the money to send and she existed basically on a student loan, and loans from her mother and grandmother, but she did admit to being employed in part-time jobs on occasion while she was furthering her education in Pennsylvania. Tr. 83-86. She testified that she knew Jeffrey's income was more than sufficient to provide for their children and that: "I knew that they had clothing, food and personal property way beyond what they probably needed. I was not in fear they weren't eating. If that had not been the case, I would have been working. But, I am doing something to help them. I am getting a degree in a field that will help them, and I will serve as a role model that I continued and pursued something that is to their benefit and mine." Tr. 88. In spite of that, she admitted, on cross-examination, that she understood that she had an obligation to pay support for the children. Tr. 90.
R.C. 3107.07(A) provides that consent to adoption is not required of a parent who has failed, without justifiable cause, to communicate with the minor or to provide for the maintenance and support of the minor for a period of at least one year immediately proceeding the filing of the adoption petition. The petitions for all three children in this case were filed on September 17, 1998. The petitions alleged both failure without justifiable cause to communicate with the children for the year proceeding the filing, and that Shannon had failed without justifiable cause to provide for the maintenance and support during that one year period.
The issue of communication, as well as lack of support, was therefore before the trial court. Shannon claimed she sent the children birthday cards (Tr. 80), but both Jeffrey and the petitioner for the adoption, his wife, testified that Shannon never contacted the children either by telephone or by mail until they received Christmas cards in December, 1998, well after the petitions for adoption had been filed. However, the trial court in its somewhat conclusory entry, which is the subject of this appeal, "finds that for the statutory one-year period, the natural mother failed without justifiable cause to pay any support pursuant to an order of support from a Michigan court, and further, there was no communication for the same one-year period." Docket 13. Since the Court did not find that there was no justifiable cause for the failure of communication, we do not believe that issue is presented to us on appeal. Thus the only issue before us is whether the petitioner in the three adoptions met her burden of proving by clear and convincing evidence that Shannon failed without justifiable cause to provide maintenance and support for her three children for the year proceeding the filing of the petition. In Re: Adoption of Bovett (1987),33 Ohio St.3d 102, paragraph one of the syllabus.
As this court has stated:
 "Once the petitioner has met that burden, the burden of going forward with the evidence shifts to the natural parent to show some `facially justifiable cause' for his failure to provide maintenance and support during the one-year period; the burden of proof, however, remains with the petitioner. Id.,
paragraph two of the syllabus. The probate court must determine the issue of justifiable cause `by weighing the evidence of the natural parent's circumstances for the statutory period for which he or she failed to provide support.' Id.,
paragraph three of the syllabus. The probate court's determination on the issue of justifiable cause will not be disturbed on appeal unless it is contrary to the manifest weight of the evidence. Id., paragraph four of the syllabus." In the Matter of the Adoption of Paul Michael LaValley
(July 9, 1999), Montgomery App. No. CA 17710, unreported.
On appeal, Shannon relies on this court's decision in In the Matter ofthe Adoption of Hadley (May 6, 1991), Greene App. No. 90-CA-117, unreported. In Hadley, which was recently followed and relied upon by this court inLaValley, supra, this court held:
 Where a child's needs are being adequately provided for by [custodial parents], who are in a better financial position than the natural parent, and the [custodial parents], being aware of the natural parent's financial circumstances, express no interest in receiving financial assistance from the natural parent, we conclude that the natural parent's failure to contribute towards the support of the child is not "without justifiable cause," for purposes of R.C. 3107.07(A).
We explained the rationale for our decision in Hadley, as follows:
 If a parent has any reason to believe that his or her financial assistance may be reasonably necessary for the support of the child, then the failure to provide any financial assistance for a full year evinces such a complete abdication of parental responsibility as to justify the termination of the parental relationship in favor of adoption, so long as the adoption is found to be in the best interests of the child. However, where, as here, the parent has no reason to believe that his or her financial assistance is necessary for the support of the child, and the persons caring for the child have expressed no interest in receiving any financial assistance or contribution from the parent, no such abdication of parental responsibility is suggested by the natural parent's failure to provide financial assistance that is neither needed nor requested.
The case sub judice is distinguishable from Hadley in that there petitioner had never asked for financial assistance from the natural parent and no court order had ever been issued against the natural parent requiring child support. Here, Jeffrey did petition and receive an order for child support and Jeffrey testified that he expected to receive that support from Shannon. Tr. 51-52. Jeffrey further testified that he believed Shannon should be able to pay support because she was able to obtain employment, and that the court in Michigan set the child support amount because it believed she should be able to hold a job. Tr. 13-14. Furthermore, Shannon herself testified that she made a conscious choice to seek higher education, even though she already had a degree from Michigan State University, rather than obtain employment. Tr. 92-93. She also testified that she did not pay anything at all on her court ordered child support even when she was working part-time jobs. Tr. 93. Thus, while the case sub judice meets some of the criteria adopted in Hadley, it does not meet all of them. Voluntary unemployment, for whatever good and worthy reasons (such as being a role model for her children) is not by itself sufficient justifiable cause for failure to meet even any small part of court-required child support payments. In Re: Adoption of Deems (1993), 91 Ohio App.3d 552.
On the record before us, we cannot find that the decision of the trial court is contrary to the manifest weight of the evidence. The assignment of error is, therefore, overruled, the judgment is affirmed, and the case is remanded for further proceedings.
BROGAN, J., and FAIN, J., concur.
Copies mailed to:
John F. Kolberg
James E. Swaim
Hon. George J. Gounaris
[1] Hereafter the parties will be referred to by their first names for the sake of clarity.